# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOE LEONARD LAMBRIGHT,
            *Petitioner-Appellant,*

v.

CHARLES L. RYAN,
            *Respondent-Appellee.*

No. 10-99012

D.C. No.
4:87-cv-00235-JMR

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, District Judge, Presiding

Argued and Submitted
April 16, 2012—San Francisco, California

Filed October 17, 2012

Before: Mary M. Schroeder, Stephen Reinhardt, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Callahan

**COUNSEL**

Jon M. Sands, Federal Public Defender; Jennifer Y. Garcia (argued) and Dale A. Baich, Assistant Federal Public Defenders; Keith J. Hilzendeger, Research and Writing Specialist, Federal Public Defender for the District of Arizona, Phoenix, Arizona, for the petitioner-appellant.

Thomas C. Horne, Attorney General; Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section; Ginger Jarvis (argued), Assistant Attorney General, Criminal Appeals/Capital Litigation Section, Office of the Attorney General of Arizona, Phoenix, Arizona, for the respondent-appellee.

## OPINION

REINHARDT, Circuit Judge:

Joe Leonard Lambright appeals the decision of the district court to modify the protective order issued in his federal habeas proceeding to permit Respondent to turn over materials produced during the federal proceeding to the agency that will prosecute his resentencing, the Pima County Attorney's Office. The district court granted Respondents' motion for modification, reasoning that the protective order covered only materials disclosed after the issuance of the order, that Lambright did not rely on the protective order, that any privileged material lost protection under the order when it became part of the public record during the evidentiary hearing, and that Lambright had failed to explain the basis for his assertion that certain materials were privileged. We hold that the district court abused its discretion in granting the motion for modification as to materials that are privileged. First, the language of the protective order covers all materials, not just materials produced after its issuance, and, in any event, the failure to enter the order before the commencement of discovery was an abuse of discretion. Second, the protective order was sufficient to protect the materials introduced at the evidentiary hearing, and Lambright was entitled to rely on the assurances made by the district court that evidence introduced during the evidentiary hearing was protected by the order. Third, the district court did not request that Lambright explain the basis for asserting that certain materials were privileged, and erred in failing to recognize that his waiver of the Fifth Amendment privilege was limited; thus its modification of the protective order as to those materials was an abuse of discretion. We therefore vacate the portion of the order relating to privileged materials and remand to the district court for further proceedings to resolve all disputes as to which specific materials are privileged and thus are covered by its protective order. We hold, however, that the district court did not abuse its discretion in modifying the protective order so as to exclude from

its coverage non-privileged material, and therefore affirm that portion of its order.

Lambright also appeals the decision by the district court to deny his motion for discovery and an evidentiary hearing prior to the imposition of sanctions on Respondents for violating the protective order and for disqualification of the Arizona Attorney General's Office from representing Respondents at the sanctions evidentiary hearing. We hold that the district court did not abuse its discretion in denying the motion for discovery and an evidentiary hearing. The parties had a full opportunity to brief the issue, and based on the evidence before it, the district court concluded that the violation of the protective order was inadvertent. Because we hold that the district court did not abuse its discretion in failing to hold an evidentiary hearing, the disqualification of the Arizona Attorney General's Office from representing Respondents is moot.

## BACKGROUND

In 1987, Lambright filed a federal habeas petition under 28 U.S.C. § 2254 in the Arizona District Court. In his petition, Lambright argued *inter alia* that he was denied effective assistance of sentencing counsel. The district court dismissed that claim, finding that it was procedurally defaulted. We reversed and remanded "for an evidentiary hearing . . . . to determine whether Lambright was denied effective assistance of counsel at sentencing because of the failure to investigate and present evidence of his psychiatric condition and social history." *Lambright v. Stewart (Lambright I)*, 241 F.3d 1201, 1208 (9th Cir. 2001).

On remand, between July 26, 2001 and August 26, 2003, the district court entered several discovery orders. On July 26, 2001, the district court ordered that discovery be conducted pursuant to Rule 6(b) of the Rules Governing Section 2254 Cases,[1] and instructing the parties to engage in informal dis-

---

[1]Rule 6(a) states: "Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."

covery. Starting on June 18, 2002, the district court ordered Lambright and Respondents to disclose the names of all witnesses and a summary of their anticipated testimony, to exchange expert reports, and to produce all raw data and background documents and information used by the experts. On February 11, 2003, the district court granted Respondents' motion for an order requiring the Arizona Department of Corrections to provide copies of Lambright's medical and mental health records. On July 14 and 18, 2003, the district court granted Respondents' motions to allow state experts, Dr. Anne Herring and Dr. Gina Lang, to examine Lambright. On August 26, 2003, the court granted Respondents' motion to depose Lambright and his trial counsel, Carmine Brogna; it also authorized each party to depose experts.

On September 2, 2003, Lambright moved for a protective order, noting that Respondents intended to ask "questions, at his deposition, concerning the crime that [he] was convicted of," which he argued would be irrelevant and violate his Fifth Amendment right against self-incrimination. Lambright requested the protective order to prevent that "deposition testimony [from being] used against him at the new sentencing hearing." The district court held oral argument on September 19, 2003, during which Lambright's counsel requested that the motion for a protective order be deemed a motion to prevent Respondents from deposing Lambright. The district court relied on two cases, *Bean v. Calderon*, 166 F.R.D. 452 (E.D. Cal. 1996), which held that a habeas petitioner could be deposed subject to invocation of his Fifth Amendment right, but that an adverse inference could be drawn from such invocation, and *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (en banc), in which we held that a habeas petitioner waives his attorney-client privilege in a proceeding raising an ineffective assistance of counsel claim, but that such waiver is narrow and limited to what is necessary to allow the state to fairly defend against such claim. The court granted the protective order, but denied the request to preclude Respondents from deposing Lambright. When Lambright's counsel

inquired as to the scope of the protective order, the district court responded that it would be described in the order itself.

On September 23, 2003, the district court issued a protective order with the following parameters:

> IT IS FURTHER ORDERED that all discovery granted to Respondents, including the requests to depose sentencing counsel Brogna, Petitioner's experts and Petitioner, shall be deemed to be confidential. Any information, documents and materials obtained vis-a-vis the discovery process may be used only by representatives from the Office of the Arizona Attorney General and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus (and all amendments thereto) pending before this Court. None may be disclosed to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this Court. This Order shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a resentencing, except that either party maintains the right to request modification or vacation of this Order upon entry of final judgment in this matter.

> IT IS FURTHER ORDERED that Respondents' deposition of Petitioner must specifically relate to assertions Petitioner has made in this habeas petition (or amendments thereto), and for which it is likely that Petitioner has personal knowledge. The questions must be phrased in such a manner that they are directly linked to the federal claim upon which Petitioner is being deposed. Petitioner may assert his Fifth Amendment privilege, but the assertion of that privilege may be cause for the Court to draw an adverse inference in this habeas proceeding.

In November 2003, the district court held a six-day eviden-
tiary hearing on the ineffective assistance of sentencing coun-
sel claim. During the cross-examination of Lambright,
Respondents asked questions related to his crime of convic-
tion. Lambright invoked his Fifth Amendment right, and his
counsel entered a standing objection to all questions related to
the crime. The court responded:

> THE COURT: . . . Mr. Lambright, I should mention
> I have also issued a protective order so that should
> the petition be granted, either now or at some later
> time and there is a new sentencing hearing in this
> case, your testimony concerning the crimes in this
> case that you would not otherwise answer but decide
> to answer could not be used against you in connec-
> tion with that hearing. So there is not a risk of your
> testimony and statements concerning the crimes in
> this case being used against you in a future hearing
> in connection with this case insofar as resentencing.
>
> MR. ADDIS (counsel for Lambright): Your Honor,
> I understand the Court's protective order. Actually,
> I had thought until just now that it had just applied
> to the discovery deposition that we did, but I'm also
> aware of case law which indicates that matters
> brought up in a hearing like this can later be used in
> a resentencing, so I would say that our understanding
> of the law is that it's unclear at this time whether the
> Court's protective order would hold up at a later
> resentencing in terms of anything Mr. Lambright
> might say here.
>
> THE COURT: Well, I can't imagine the judge that
> would admit the evidence when any testimony con-
> cerning the crimes was given on the assurance of the
> judge before the testimony was given that that testi-
> mony could not be used in connection with the
> resentencing, and that is the order that I have

entered, so I think they would have to disregard the protective order that I have issued and I suspect you would be very successful in precluding any use of it, so I don't think it's a realistic risk.

The court allowed Respondents to continue cross-examining Lambright with questions related to his crime of conviction, which Lambright refused to answer. On August 30, 2004, the district court denied Lambright habeas relief on his ineffective assistance of sentencing counsel claim. We reversed, vacated his death sentence, and instructed the state court to conduct a new sentencing proceeding. *Lambright v. Schriro (Lambright II)*, 490 F.3d 1103 (9th Cir. 2007).

On October 10, 2008, Respondents filed a Motion to Modify Protective Order with the district court, requesting that the protective order be modified to allow the Pima County Attorney's Office access to materials produced during the federal habeas proceeding. Rather than respond to the modification motion, Lambright filed a Motion for Order to Show Cause on November 3, 2008, alleging that Respondents violated the protective order by sending protected materials to the Pima County Attorney's Office without first seeking modification of the order. On December 3, 2008, the district court issued an order addressing the parameters of the protective order. The court stated that although it had mistakenly omitted the word "privileged" from the protective order, it was evident from *Bean* and *Bittaker*, the cases upon which the court relied, that only privileged materials were covered. Thus, it modified the order "so that it will be narrowly tailored to solely protect documents and information that qualify for protection under the Fifth Amendment or the attorney-client privilege." The court then granted Lambright an opportunity to "identify the specific information or materials he asserts should be protected from use at his resentencing."

Instead of responding to the order, Lambright filed an appeal. On March 24, 2009, the district court held that its

December 2008 order was not final or appealable, and proceeded to vacate the protective order and deny the motion for an order to show cause. Lambright appealed the March 2009 order as well. On appeal, we held that we lacked jurisdiction over the December 2008 order, but that we had jurisdiction to review the March 2009 order. *Lambright v. Ryan (Lambright III)*, 359 F. App'x 838, 840 (9th Cir. 2009). We held that we could not review the denial of the motion for an order to show cause on the record before us, and we therefore vacated the order and remanded "so that the court may resolve any disputed factual questions and make factual findings regarding the circumstances surrounding, and the extent and effect of, the violation and then determine whether sanctions are warranted." *Id.* Moreover, we noted that, as a result of his premature appeal, Lambright "never responded to the court's request that he identify material that was protected," and "had no opportunity to explain whether, in his view, *non*-privileged material or material that did not emerge through the discovery process warranted protection, given this court's rationale in *Bittaker v. Woodford*: 'If a prisoner is successful in persuading a federal court to grant the writ [of habeas corpus], the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free.' " *Id*. at 841 (quoting *Bittaker*, 331 F.3d at 722) (alteration and emphasis in original). Because the district court did not have the information necessary to rule on the modification motion, we vacated the modification order and remanded for further proceedings. *Id.*

On remand, the district court ordered supplemental briefing from both parties. The court ordered Respondents to address the extent and cause of the protective order violation, and any prejudice Lambright might have suffered as a result of the violation. The court ordered Lambright to "set forth *inter alia* the specific statements or information he contends are privileged and should be protected from use at his resentencing."

Respondents' supplemental brief asserted that any violation of the protective order was inadvertent, and submitted affida-

vits from Patricia Nigro and Kent Cattani, attorneys in the Arizona Attorney General's Office, stating that they were unaware that the file contained materials covered by the protective order. Concerning the extent of the violation, Respondents contended that the materials in the file were not protected because "most, if not all, of the evidence at issue was presented in open court with no suggestion that the court proceedings would remain under seal." Respondents also argued that the prejudice to Lambright was minimal because the Pima County prosecutor had "avowed" not to look at any protected materials absent authorization from the district court, any mental health information fell outside the scope of the protective order because it was disclosed prior to the issuance of the order, and Lambright had put his mental health at issue at resentencing.

In his supplemental brief, Lambright identified the materials that he asserted were protected by the attorney-client, work product, and Fifth Amendment privileges, and non-privileged materials that he argued should be covered by the order and barred from use at resentencing in order to return him to the position he would have been in had his first sentencing been constitutionally error-free. Lambright also filed a Motion for Discovery and an Evidentiary Hearing Relating to Petitioner's Motion for an Order to Show Cause and Motion to Disqualify the Office of the Arizona Attorney General. Lambright argued that resolving the issue of the violation of the protective order based on the parties' briefs would inadequately develop a factual record, and that the Arizona Attorney General's Office should be disqualified from representing Respondents prior to the requested evidentiary hearing because some of its attorneys would be necessary witnesses at the hearing.

Respondents filed a reply, arguing that the court should affirm its order vacating the protective order. Respondents argued that Lambright waived any privilege to his mental health information when he placed his mental health at issue

in his resentencing proceeding, that he did not rely on the protective order because his counsel was only concerned with testimony regarding the crime of conviction, did not seek to seal the evidentiary hearing, and disclosed mental health information prior to the issuance of the order, that he waived the attorney-client and work product privileges when he raised his ineffective assistance of counsel claim, and, even if not waived, he did not provide any explanation of how the materials listed in his brief were subject to a privilege, and that the Fifth Amendment privilege was inapplicable because Lambright refused to answer questions regarding his crime of conviction.

The district court issued its decision on May 4, 2010. The court denied the motion to disqualify the Arizona Attorney General's Office from representing Respondents, finding that there was no pending "trial" and that "any testimony from [its] lawyers or staff would be in regard to the 'nature . . . of legal services rendered in the case' and thus exempt from [the advocate-witness rule]." The court also denied the motion for discovery and an evidentiary hearing on the violation of the order, finding that based on the sworn affidavits by the Arizona Attorney General's Office attorneys, "there are no disputed issues of material fact." The court found that Lambright did not suffer any prejudice from the disclosure of the file to the Pima County Attorney's Office because the materials had not been used at his resentencing proceeding, and because Lambright had failed to show that those materials could not have been obtained from public records of the federal evidentiary hearing. Although the court acknowledged that Respondents violated the "plain language of the protective order," it agreed that the file was "inadvertently" sent and, rather than preclude the use of the materials, the court directed the retrieval of the file as a sanction.

The district court then addressed the modification of the protective order. The court held that because the "protective order . . . does not state that it applied retroactively . . . the

only materials that fall within the scope of the order are those that were disclosed after the order issued on September 23, 2003." The court further held that Lambright did not rely on the protective order because he engaged in discovery prior to its issuance, had "sought only a narrow protective order," and refused to answer questions related to the crime of conviction even after the order was issued. The court acknowledged that it "inadvertently omitted the word 'privileged' in its protective order," but held that "it is apparent when considered in context with the original motion and oral argument in support of the motion, that the Court intended its protective order to address only the concerns set forth in *Bean* and *Bittaker*." Although Lambright identified materials that he claimed were privileged, and thus should remain subject to the protective order, the court rejected the assertion of privilege, faulting Lambright for failing to explain the basis for the privilege asserted. The court also declined to extend protection to non-privileged material, based on the "status quo" language from *Bittaker*, reasoning that upholding the broad protective order would lead to duplicative discovery in the resentencing proceeding. Lastly, the court found that all evidence presented during the federal evidentiary hearing became public record because Lambright did not request that any materials be sealed. The court held that the assurances given to Lambright during the evidentiary hearing concerned only his testimony about the crime and not all materials introduced during the evidentiary hearing. Accordingly, the district court modified the protective order so that it would "remain in effect only as to the transcript of [Lambright's] deposition," but granted a stay pending appeal.

This appeal followed.

## DISCUSSION

### I.

We first address the modification of the protective order, and review for abuse of discretion. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992) ("The court reviews the grant of a protective order for abuse of discretion, . . . as well as a request to modify a protective order.") (citations omitted).[2] "In general terms we have held that a district court abuses its discretion when it makes an error of law, when it rests its decision on clearly erroneous findings of fact, or when we are left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc) (internal quotation marks, alteration, and citation omitted). Even if the district court identifies the correct legal standard, it abuses its discretion if its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (internal quotation marks and citation omitted).

### A.

**[1]** As noted above, the district court, in considering the scope of the protective order, determined that it covered only materials produced after the order was issued on September 23, 2003. This determination was an abuse of discretion for two reasons. First, its interpretation of the text of the protective order is illogical. The district court reasoned that the pro-

---

[2]We note that although this appeal arises out of habeas proceedings at the district court level, no certificate of appealability is required for us to exercise jurisdiction since we are not reviewing the district court's "final order[ ] that dispose[s] of the merits of [the] habeas corpus proceeding." *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

tective order applied only to those materials produced after its issuance because the order did not specifically state that it applied retroactively. The order, however, states that it applies to "all discovery granted to Respondents" and to "[a]ny information, documents and materials obtained vis-a-vis the discovery process." The common meaning of the word "all" is "the whole amount, quantity, or extent of; as much as possible," and the common meaning of the word "any" is "one or some indiscriminately of whatever kind: one or another taken at random; every — used to indicate one selected without restriction." *All and Any Definition*, Merriam-Webster Dictionary, http://www.m-w.com (last visited October 4, 2012). The absence of a specific statement that the order applies retroactively does not alter the ordinary meanings of these words. To the contrary, in the absence of any limitation, the only logical reading of the order is that it applies to the entirety of materials produced in the federal habeas proceeding, whether before or after issuance of the protective order. It is illogical to say, as the district court does here, that the words "all" and "any" do not really mean "all" and "any" but instead mean "only the materials produced after this order." Nothing in the record supports the district court's reading of the order. Its attempt to limit the scope of the order to those materials produced after September 23, 2003, is illogical and therefore an abuse of discretion. *See Hinkson*, 585 F.3d at 1262. The dissent argues that we should not read the text of the September 23 order literally because it was issued in response to a motion that "only sought prospective relief for testimony to be given at a deposition." Dissent at 12533. This argument ignores the fact that the district judge himself instructed the parties to look to the text of his order in order to determine its scope. After oral argument on September 19, 2003, the court indicated it intended to grant a protective order and Lambright's counsel asked what its scope would be. The district judge responded: "Well, it will be set out. I will issue an order that will describe what that is." We take the district judge at his word.

**[2]** Second, the district court abused its discretion because it had a duty to enter a protective order prior to ordering the disclosure of privileged materials. In *Bittaker*, we delineated the scope of the waiver of the attorney-client and work product privileges when a federal habeas petitioner raises a claim of ineffective assistance of counsel. 331 F.3d at 716-17, 722 n.6. We held that, although that petitioner impliedly waives his attorney-client privilege, such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim in the federal habeas proceeding. *Id*. at 720-25. In order to protect that limited waiver, we stated that

> district courts have the *obligation*, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding . . . .

*Id*. at 727-28 (emphasis added). We explained that parties in habeas cases, "unlike those in ordinary civil cases, have no right to discovery," and that discovery is available if, and only "to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so." *Id.* at 728 (internal quotation marks and citations omitted). "If a district court exercises its discretion to allow such discovery . . . , it *must* ensure compliance with the fairness principle. To that end, it *must* enter appropriate orders clearly delineating the contours of the limited waiver *before* the commencement of discovery, and strictly police those limits thereafter." *Id.* (emphasis added).

**[3]** Despite this clear holding, the dissent insists that *Bittaker* does not require the protective order to be issued at the commencement of discovery on a habeas petitioner's ineffective assistance claim because "the doctrine of implied waiver does not arise when a habeas petition is filed, but only once

a defendant brings a question of privilege to the court's attention." Dissent at 12536. We disagree. The defendant impliedly waives his attorney-client privilege the moment he files a habeas petition alleging ineffective assistance of counsel.[3] *See Bittaker*, 331 F.3d at 716 ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."); *see also id.* at 719 (quoting 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 503.41[1], at 503-104.1 to .2 (Joseph M. McLaughlin ed., 2d ed. 2003) for the proposition that attorney-client privilege "may be found to have been waived by implication *when a party takes a position* in litigation that makes it unfair to protect that party's attorney-client communications" (emphasis added)). Subsequent orders by the district court merely serve to clarify the scope of the waiver. This is why a district court is obligated under *Bittaker* to issue a protective order prior to authorizing discovery on a defendant's ineffective assistance claim "to ensure compliance with the fairness principle."[4] *Bittaker*, 331 F.3d at 728.

**[4]** Here, the district court entered an order in July 2001, authorizing the parties to engage in discovery. After that, the court entered several orders for production of information and materials to Respondents, including: several orders starting in June 2002, ordering Lambright and Respondents to disclose the names of all of his witnesses and to provide a summary of their anticipated testimony, to exchange expert reports, to

---

[3]For the same reason, the dissent's argument that Lambright expressly, rather than impliedly, waived his attorney-client privilege is incorrect. The privilege was impliedly waived when Lambright filed his ineffective assistance claim, so he could not later expressly waive the privilege by simply disclosing privileged documents without objection.

[4]Contrary to the dissent's assertions, we do not hold that a district court must issue a protective order the moment a habeas petitioner asserts an ineffective assistance of counsel claim. It must, however, do so prior to authorizing discovery on such a claim. *Bittaker*, 331 F.3d at 728.

engage in informal discovery including witness interviews and document exchanges without further court supervision, and to produce all raw data and information used by the experts; an order in February 2003, granting Respondents access to Lambright's medical and mental health records from the Arizona Department of Corrections; two orders in July 2003, granting Respondents' motions to allow state experts to examine Lambright; and an order in August 2003, allowing Respondents to depose Lambright and his trial counsel, and authorizing the deposition of experts.[5] Yet, the district court did not enter the protective order until September 23, 2003, *after* Lambright filed a motion raising concerns about his deposition testimony, and only two months prior to the evidentiary hearing. Under *Bittaker*, however, the district court had the *obligation*, in ordering the production of discovery on the ineffective assistance of counsel claim, to "enter appropriate orders clearly delineating the contours of the limited waiver *before* the commencement of discovery." 331 F.3d at 728 (emphasis added). The court knew that Lambright, in his federal habeas petition, was litigating the ineffectiveness of his sentencing counsel, and that engaging in discovery necessarily meant that Lambright would be forced to reveal information protected by the attorney-client and work product privileges. As a consequence, the court had "the *obligation*, [in] permit[ting] discovery of attorney-client materials as rele-

---

[5]The dissent, on the basis of its review of the district court docket, claims that none of these orders can be interpreted as ordering discovery that might include material that was protected by the attorney-client privilege or the privilege against self-incrimination. This argument simply ignores the content of many of the orders listed on the docket. For example, on June 18, 2002 and September 13, 2002, the court ordered the parties to engage in "informal discovery, such as witness interviews and exchange of documents" which would have included attorney-client privileged documents. And, as mentioned above, the district court's August 26, 2003 order expressly authorized the deposition of Lambright and his attorney. We have no idea how our dissenting colleague can interpret these orders as not authorizing discovery that would include privileged information.

vant to the defense of ineffective assistance of counsel claim[ ], to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding." *Id.* at 727-28 (emphasis added). Its failure to enter the protective order prior to September 2003, as required under *Bittaker*, was an error of law and thus an abuse of discretion. *See Ressam*, 679 F.3d at 1086.

B.

**[5]** The district court, citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003), also held that, because Lambright did not attempt to seal any discovery materials submitted during the evidentiary hearing, those materials became part of the public record and are no longer covered by the protective order. This determination also constitutes an abuse of discretion. First, there is no indication in *Bittaker* that the protective order entered by the district court is insufficient by itself to protect the narrow waiver of the attorney-client and work product privileges and to prevent the disclosure and use of materials in a resentencing proceeding. *Bittaker* offers no reason to provide less protection for privileged information disclosed in an evidentiary hearing than for privileged information disclosed during pretrial discovery. In fact, where, as here and in *Bittaker*, the purpose of a protective order is to allow a party to disclose materials in a habeas proceeding but not in subsequent litigation (as opposed to shielding the evidence from the public), it would render the order practically useless to hold that disclosing the materials in the habeas hearing deprives that material of protection in the subsequent litigation. Moreover, the language in *Bittaker* supports the conclusion that its holding extends to the entire habeas litigation, not to pretrial discovery only. In that case, we explained that the state courts "remain free, of course, to determine whether [the petitioner] waived his attorney-client privilege on some basis *other than* his disclosure of privileged information *during the course of the federal litigation*." 331 F.3d at 726 (second emphasis added); *see also id.* at 722

("[W]e can conceive of no federal interest in enlarging the scope of the waiver beyond what is needed to litigate the claim of ineffective assistance of counsel in federal court. A waiver that limits the use of privileged communications to adjudicating the ineffective assistance of counsel claim fully serves federal interests.") (emphasis added). Thus, under *Bittaker*, disclosure of protected material "during the course of the federal litigation" remains protected. *Id.* at 726. This necessarily extends beyond the discovery phase and includes the evidentiary hearing during which the petitioner presents his claim to the district court.

**[6]** *Foltz* is not to the contrary. In *Foltz* we explained that materials that are sealed during discovery presumptively may not remain sealed once they are filed with the court for public policy reasons *unless* the materials in questions are of a type that "have traditionally been kept secret for important policy reasons." 331 F.3d at 1134 (internal quotation marks and citation omitted). Attorney-client privileged materials, of course, are archetypical examples of material that has traditionally been kept secret for important policy reasons. *See, e.g.*, *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2320 (2011). Consequently, the protective order was sufficient to protect Lambright from the disclosure and use of protected materials at resentencing, and his counsel was not required to seal the evidentiary hearing in order to ensure that such materials remained protected. The contrary determination by the district court constituted an error of law, and thus an abuse of discretion. *See Ressam*, 679 F.3d at 1086.

**[7]** Second, Lambright was entitled to rely on the assurances by the district judge, made during the evidentiary hearing, that the protective order extended to evidence introduced at the hearing. During the evidentiary hearing, after Lambright invoked his Fifth Amendment right to refuse to answer questions regarding his crime of conviction, the district judge stated to Lambright that he had "issued a protective order so that should the petition be granted . . . your testimony con-

cerning the crimes in this case that you would not otherwise answer but decide to answer could not be used against you in connection with that hearing." The judge further reassured Lambright that his testimony could not be used against him at resentencing because "that is the order that I have entered." It is clear from this exchange that the district judge assured Lambright that the protective order would cover the evidence at the evidentiary hearing, not just the material exchanged during discovery.

In its order, the district court attempted to limit the scope of its assurances, stating that "[t]he record is clear that the Court offered during the evidentiary hearing an extension of the discovery protective order solely to protect any testimony by [Lambright] concerning the underlying crime." The assurances, however, were not meant as an "extension of the discovery protective order." The district judge represented to Lambright and his counsel that the protective order, *as issued*, fully covered the evidentiary hearing. At no point during the exchange at the evidentiary hearing did the judge suggest that he was extending or somehow modifying the scope of the protective order to cover the evidence at the hearing. Rather, the judge stated that he "*ha[d] issued* a protective order" that covered the testimony offered at the hearing. (emphasis added). The judge refers to the protective order, as already issued, protecting statements made during the evidentiary hearing. After Lambright's counsel objected, specifically expressing a concern that "matters brought up in a hearing like this can later be used in a resentencing," the district judge again referred to the protection of "the order that I *have entered*." (emphasis added). To use the testimony from the evidentiary hearing at the resentencing, the judge assured Lambright, the state court "would have to disregard *the protective order that I have issued*." (emphasis added). Notably, the district judge did not say that the state court would have to disregard his statements at the evidentiary hearing; rather, he referred to the protection granted by the already issued order. Clearly, the judge was not extending the protective order, as the district

court now attempts to argue, but giving assurances regarding the scope of the already issued order. Moreover, although the assurances were made in the context of the testimony regarding the crime, as that was the testimony Lambright refused to give, there is no reason to believe that the protective order applied with any less force to other protected material introduced during the evidentiary hearing.

**[8]** Thus, because the district judge assured Lambright and his counsel that the protective ordered covered evidence presented during the evidentiary hearing, Lambright was not required to seal the proceedings to protect his interests. Based on the assurances, Lambright reasonably believed that the protective order was sufficient to safeguard his rights, and that seeking to seal the proceedings "would have been redundant." This court has held that "the explicit assurances that a judge makes . . . must be consistent and worthy of reliance." *Perry v. Brown*, 667 F.3d 1078, 1087 (9th Cir. 2012). "Because [Lambright] reasonably relied on [the assurances by the district judge that the protective order covered the evidentiary hearing], the setting aside of [that] commitment[ ] would compromise the integrity of the judicial process. The interest in preserving respect for our system of justice is clearly a compelling reason for" extending the protection of the order, notwithstanding the fact that the materials are now public record. *Id.* at 1088. In light of the assurances by the district court, the conclusion that Lambright forfeited protection of materials introduced during the evidentiary hearing was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record," and thus an abuse of discretion. *Hinkson*, 585 F.3d at 1262 (internal quotation marks and citation omitted).

C.

Lambright, in his supplemental brief to the district court, identified the materials he asserted were covered under the protective order because of the attorney-client, work product,

or Fifth Amendment privileges. The district court rejected the claim that the documents listed by Lambright in his supplemental brief should be protected because "it is simply not clear from [his] brief how or why the attorney-client or work-product privilege applies to these materials," and because Lambright had not "identified any compelled testimony . . . or otherwise explained how the Fifth Amendment right against self-incrimination is relevant to the . . . documents." In doing so, the district court abused its discretion.

**[9]** The district court faulted Lambright for not providing an explanation of how or why the privilege applied to each item identified. The supplemental briefing order, however, only required that Lambright "set forth *inter alia* the specific statements or information he contends are privileged and should be protected from use at his resentencing." That is, the district court asked that Lambright *identify* the documents he believed should remain protected. It did *not* require that Lambright show, for each material identified, why the asserted privilege applied. It is true that a "party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir.1989). Given the wording of the order, however, it was not unreasonable for Lambright to believe, as he asserts on appeal, that the "grounds for claiming the privilege were hardly 'unclear' to the district court," and that no explanation was required for the district court to rule on the modification of the order. Faulting Lambright for failing to make a showing that the briefing order did not require him to make was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record," and the district court thus abused its discretion. *Hinkson*, 585 F.3d at 1262 (internal quotation marks and citation omitted).

**[10]** The district court also abused its discretion in holding that Lambright had not shown that the Fifth Amendment privilege applied because he had not demonstrated that his testi-

mony was compelled. It was not necessary for Lambright to show that his testimony was compelled. The Fifth Amendment prohibits use of his testimony at resentencing so long as it could be used to establish aggravating factors or to undermine his claim of mitigating factors, *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981), and offering it was necessary to vindicate his constitutional rights in the habeas proceeding, *Simmons v. United States*, 390 U.S. 377, 388-94 (1968). Thus, a waiver of the Fifth Amendment privilege is subject to the same limits imposed on the waiver of the attorney-client and work product privileges in *Bittaker*. That is, the waiver of the Fifth Amendment privilege in a habeas proceeding is narrow and courts must limit the use of any privileged testimony to litigation of the habeas claim. In *Bittaker*, we explained that a waiver of the attorney-client and work product privileges was implied out of fairness to the State, in that a habeas petitioner could not use "the privilege as both a shield and a sword." 331 F.3d at 719. "The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Id.* at 720. Similarly, a waiver of the Fifth Amendment privilege is implied out of fairness to the State, and the petitioner is given a choice: If you want to litigate this claim, which puts your mental health and state of mind at the time of the crime at issue, you must waive your privilege to the extent necessary to allow the State a fair opportunity to defend against such claim. As in *Bittaker*, this justification means "that the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* Most important, failure to impose a narrow waiver "would force [the petitioner] to the painful choice of, on the one hand, asserting his ineffective assistance claim and risking a trial where the prosecution can use against him" any statements he may have made during the habeas proceeding "and, on the other hand, retaining the privilege but" abandoning his claim. *Id.* at 723. "This would violate the spirit, and perhaps the letter, of *Simmons*,"

where the Supreme Court explained that "it would be constitutionally unacceptable to require a criminal defendant to choose between two *constitutional* rights." *Id.* at 723 & n.7 (emphasis in original). It is true that in some circumstances petitioners, including Lambright, are permitted to refuse to answer questions by asserting their Fifth Amendment privilege. The court, however, is permitted to draw a negative inference against the petitioner, which could jeopardize his chances of vindicating his constitutional rights. Moreover, some claims, such as the one asserted by Lambright in this case, cannot be asserted without some waiver of the privilege. Simply put, Lambright could not simultaneously put his mental health at issue and then refuse to answer questions from mental health experts by asserting his Fifth Amendment privilege. Finally, the logic that a habeas petitioner should not be disadvantaged at retrial because his constitutional rights were violated in his first trial applies equally whether the disadvantage is the disclosure of attorney-client materials or the waiver of the Fifth Amendment privilege. *See id.* at 722. Therefore, as in *Bittaker*, the district court is required to ensure that, whenever a waiver of the Fifth Amendment privilege against self-incrimination is required to allow the State to fairly defend against a habeas claim, such waiver is narrow and the court must limit the use of any privileged material to the litigation of the habeas claim. Because the district court failed to recognize this narrow waiver, and required Lambright to show that his testimony was compelled, it committed an error of law and therefore abused its discretion. *See Ressam*, 679 F.3d at 1086.

Moreover, in ruling on the modification of the protective order without the information necessary to make a proper determination, the district court abused its discretion. District courts have the obligation to "strictly police" the limits of habeas petitioners' narrow waivers of the attorney-client, work product and Fifth Amendment privileges during habeas proceedings. *Bittaker*, 331 F.3d at 728. The district court does not fulfill that obligation when it modifies a protective order

and releases materials arguably subject to those privileges without first giving the petitioner a full opportunity to explain why such materials should remain protected. Yet that is what the court did in this case. In disregarding its obligation to "strictly police" the limits of the waivers of those privileges and releasing materials for use at resentencing without the information necessary to determine the appropriateness of such action, the district court abused its discretion.

**[11]** Lambright also asserts that certain non-privileged materials should remain protected, pursuant to *Bittaker*, "to restore him to the position he would have occupied, had the first trial been constitutionally error-free." 331 F.3d at 722. The district court rejected this argument, finding "no support for such an expansive reading of *Bittaker*," and reasoning that, taken to its logical conclusion, such a broad interpretation of the order would require that the materials developed by Lambright in the federal habeas proceeding be kept from his state sentencing counsel, forcing him to enlist new experts and reinvestigate mitigation. We hold that the district court did not abuse its discretion. To support his argument that non-privileged materials should be covered by the protective order and barred from use at resentencing, Lambright relies solely on language from our decision in *Bittaker*, stating: "If a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free." 331 F.3d at 722. This language, when read in isolation, seems broad. When read in context, however, it is clear that we were concerned with the disclosure of *privileged* materials, which the prosecution would not have had access to absent the constitutional error that necessitated a federal habeas proceeding. Lambright does not provide any other support for his position that non-privileged materials disclosed in the course of a federal habeas proceeding must be excluded from use at a resentencing. As such, we hold that the district court did not abuse its discretion in modifying the pro-

tective order authorizing the disclosure of non-privileged materials to the Pima County Attorney's Office.

## D.

For the foregoing reasons, we conclude that the district court abused its discretion in granting Respondents' motion to modify the protective order as to materials covered by the attorney-client, work product, and Fifth Amendment privileges. The district court abused its discretion in holding that the protective order did not apply to any materials exchanged prior to its issuance; the clear text of the order covers all materials, not just those exchanged after the issuance of the order and, in any event, the district court had an obligation to enter the protective order prior to the commencement of discovery in the federal habeas proceeding. The September 23, 2003 protective order, therefore, applies retroactively. The district court also abused its discretion in holding that any materials lost protection under the order because Lambright failed to move to seal the evidentiary hearing; the protective order was sufficient to protect Lambright from the disclosure and use of privileged materials and, moreover, he was entitled to rely on the district court's assurances that the protective order covered materials introduced at the evidentiary hearing. Finally, the district court abused its discretion in modifying the protective order without determining whether materials were covered under the attorney-client, work product or Fifth Amendment privileges; the district court did not request that Lambright explain the basis for asserting that certain materials were privileged, and thus erred in faulting him for failing to do so, and also erred in failing to recognize the limited waiver of the Fifth Amendment privilege when a petitioner asserts a habeas claim. We therefore vacate that portion of the May 4, 2010 order and remand to the district court for further proceedings.

We affirm, however, the portion of the May 4, 2010 order modifying the protective order as to non-privileged materials.

The portion of *Bittaker* that Lambright relies on concerns the disclosure of privileged materials, and Lambright has offered no other argument for why non-privileged materials should be excluded from use at his resentencing.

## II.

We now turn to the denial of the motion for discovery and an evidentiary hearing on the sanctions issue, and for disqualification of the Arizona Attorney General's Office from representing Respondents at the sanctions evidentiary hearing, and we review for abuse of discretion. *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164-65 (9th Cir. 2003) (reviewing district court's imposition of sanctions and refusal to hold evidentiary hearing prior to imposing sanctions for abuse of discretion); *United States v. Frega*, 179 F.3d 793, 799 (9th Cir. 1999) (reviewing district court's ruling on motion for disqualification of counsel for abuse of discretion).

## A.

In *Lambright III*, we remanded to the district court with instructions to "resolve any disputed factual questions and make factual findings regarding the circumstances surrounding, and the extent and effect of, the violation" of the protective order prior to determining "whether sanctions are warranted." 359 F. App'x at 840. On remand, the court ordered supplemental briefing from Respondents to explain the violation of the protective order and any prejudice that resulted from such violation, and afforded Lambright an opportunity to respond. After considering the supplemental briefing and affidavits submitted by the Arizona Attorney General's Office, the court held that "neither discovery nor a hearing are necessary because there are no disputed issues of material fact." The court noted that Lambright would like the opportunity to cross-examine the Arizona Attorney General's Office to verify their story, but, after considering the challenges to their credibility raised by Lambright, found that

"there is no basis for questioning the affiants' veracity and holding a hearing to have counsel restate what is already in their affidavits would be a waste of time and resources." The court thus determined that it had "sufficient knowledge of the facts to consider" the motion for sanctions. Considering those facts, the court found that Respondents "violated the plain language of the protective order when they provided materials obtained through the discovery process to the Pima County Attorney without first seeking modification of the protective order," but that this was done "without willful intent to disobey" the order. Finally, the court determined that an order directing Respondents to retrieve the materials subject to the protective order was an appropriate sanction because "such sanction will restore the parties to the position they were in had Respondents not violated the protective order."

"When necessary, the district court may hold an evidentiary hearing on a motion for sanctions." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983). Hence, the district court has the discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions on a party. Indeed, in cases in which the sanctioned party argued that it was deprived of due process because the district court failed to conduct an evidentiary hearing, where the standard is necessarily higher than it is here, as Lambright does not raise a due process argument, we have held that "[t]he opportunity to brief the issue fully satisfies due process requirements." *Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000).

[12] Here, both parties were afforded an opportunity to fully brief the sanctions issue. Respondents submitted evidence to support their arguments that the violation of the protective order was inadvertent and did not cause prejudice, and Lambright had the opportunity to challenge that evidence and present his arguments in support of his position. The district court gave careful consideration to all of the evidence and arguments raised by the parties, and ultimately concluded that

the material facts were not disputed and that, although Respondents violated the protective order, such violation was inadvertent and thus a severe sanction was not warranted. Instead, the court determined that ordering Respondents to retrieve the file from the Pima County Attorney's Office was an appropriate sanction because it returned the parties to the same position they were in prior to the violation. The district court did not commit an error of law, and we cannot say that its findings were "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262 (internal quotation marks and citation omitted). Therefore, the court did not abuse its discretion in failing to hold an evidentiary hearing prior to the imposition of sanctions on Respondents for violating the protective order.

Because we hold that the district court did not err in failing to hold an evidentiary hearing on the sanctions issue, the motion for disqualification of the Arizona Attorney General's Office from representing Respondents at that hearing is moot.

## CONCLUSION

We affirm the portion of the district court's May 4, 2010 order excluding non-privileged materials from the coverage of its protective order, but we hold that it erred in holding that: (1) the protective order applied only to privileged materials produced after its issuance; (2) the privileged materials introduced at the evidentiary hearing were no longer covered by the protective order because Lambright failed to move to seal the evidentiary hearing; and (3) the materials identified by Lambright as privileged were not protected because he failed to support his assertion of privilege by submitting written justifications to the district court. We therefore vacate those portions of the order pertaining to the numbered clauses *supra*. On remand, the district court shall allow Lambright an opportunity to support his assertions of privilege as to materials that he identified as protected by the attorney-client, work product,

and Fifth Amendment privileges, and shall determine which materials fall within a privilege and are thus covered by the protective order.

We also conclude that the district court did not abuse its discretion in failing to hold an evidentiary hearing prior to the imposition of a sanction on Respondents for violating the protective order, and thus that the sanction, trivial as it may be, was not invalid. Accordingly, we affirm that portion of the May 4, 2010 order as well. We do not reach the question whether the district court abused its discretion in denying the motion to disqualify the Arizona Attorney General's Office from representing Respondents at the sanctions evidentiary hearing, as that issue is now moot.

**AFFIRMED** in part; **VACATED** in part; **REMANDED**. Each party shall bear its own costs on appeal.

---

CALLAHAN, Circuit Judge, dissenting:

I agree with the majority that the district court did not abuse its discretion in denying the motion for discovery and an evidentiary hearing. I also agree that the district court properly modified its protective order so as to exclude from its coverage non-privileged materials. However, I dissent because the majority, in finding that the district court abused its discretion in modifying its protective order, distorts the applicable law as set forth in our en banc opinion, *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), and misperceives the facts in the case. An implied waiver, as *Bittaker* explains, arises only once a specific claim of privilege is presented to a court and any resulting protective order is forward-looking. Lambright did not seek a protective order until September 2003, after 15 months of discovery, the protective order sought only to limit the scope of Lambright's deposition, and Lambright subsequently declined to testify. Accordingly,

there was no implied waiver prior to the district court's September 2003 order, and that order does not cover the discovery that took place before it was entered. Moreover, Lambright has not shown that any rights he may have had to a protective order were not waived, or that the State should be denied access on resentencing to materials that were revealed during Lambright's habeas proceedings that were open to the public. Accordingly, I dissent.

## I.  BACKGROUND

### A.  Initial Proceedings

The majority's extraordinary interpretation of the district court's 2003 protective order is best understood in the context of the history of Lambright's criminal proceedings.

In March of 1982, Joe Leonard Lambright was convicted of first degree murder, kidnaping, and sexual assault. After a brief sentencing proceeding in which the sentencing judge found one aggravating factor — that the "offense was committed in an especially heinous, cruel or depraved manner" — and no substantial mitigating evidence, Lambright was sentenced to death. *See Lambright v. Schriro*, 490 F.3d 1103, 1106, 1109 (9th Cir. 2007) ("*Lambright III*").

Lambright's conviction and sentence were affirmed by the Arizona courts on direct appeal and in state post-conviction proceedings. *Id*. at 1104. In April 1987, Lambright filed a federal habeas petition under 28 U.S.C. § 2254 in the United States District Court for Arizona, arguing *inter alia* that he had been denied effective assistance of counsel. The district court denied the petition, and Lambright appealed.

In 1999, the Ninth Circuit reversed Lambright's conviction on the ground that the use of dual juries for a single trial of both Lambright and Smith violated due process. The en banc court then reheard the case, reversed the panel decision, and

affirmed the denial of habeas relief with respect to the dual jury issue. *Lambright v. Stewart*, 167 F.3d 477 (9th Cir.), *rev'd*, 191 F.3d 1181 (9th Cir. 1999) (en banc) ("*Lambright I*").

In 2001, this court found that Lambright had raised a colorable claim of ineffective assistance of counsel at sentencing. The court remanded for an evidentiary hearing "to determine whether Lambright was denied effective assistance of counsel at sentencing because of the failure to investigate and present evidence of his psychiatric condition and social history." *Lambright v. Stewart*, 241 F.3d 1201, 1208 (9th Cir. 2001) ("*Lambright II*").

## B. The Proceedings on Remand in 2002-2003

Upon receipt of a certified copy of our order, the district judge set the case for a scheduling conference, and granted Lambright's motion for appointment of associate counsel. Lambright sought authorization of expenditures, and when the district court initially denied the motion, Lambright submitted a declaration under seal. The district court granted the motion to file under seal, and in February 2002, it subsequently granted the motion for authorization of expenditures of funds. Over the next year and a half, Lambright, through his counsel, vigorously developed his case. There are over 80 docket entries during this time, including motions by Lambright to seal certain documents, the appointment of psychiatrists to examine Lambright, orders allowing contact visits with Lambright, stipulations concerning visits, orders requiring the disclosure of the names of all lay and expert witnesses, the release of Lambright's medical and mental health records, and motions for discovery by Lambright.

On August 26, 2003, the court granted the State's motion to depose Lambright and his trial counsel. On September 2, 2003, in response to that order, Lambright filed the motion for a protective order that is at the heart of this appeal. Lambright

requested "a protective order limiting the scope of questioning of Petitioner at his deposition, to only those matters which are relevant to the subject matter in dispute." The short memorandum of points and authorities in support of the motion was based on Lambright's Fifth Amendment right not to be compelled to be a witness against himself.

In considering the motion, the district court relied on two cases, *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) (en banc), and *Bean v. Calderon*, 166 F.R.D. 452 (E.D. Cal. 1996). On September 23, 2003, the district court granted Lambright's motion in an order that read:

> IT IS FURTHER ORDERED that all discovery granted to Respondents, including the requests to depose sentencing counsel Brogna, Petitioner's experts and Petitioner, shall be deemed to be confidential. Any information, documents and materials obtained vis-a-vis the discovery process may be used only by representatives from the Office of the Arizona Attorney General and only for purposes of any proceedings incident to litigating the claims presented in the petition for writ of habeas corpus (and all amendments thereto) pending before this Court. None may be disclosed to any other persons or agencies, including any other law enforcement or prosecutorial personnel or agencies, without an order from this Court. This Order shall continue in effect after the conclusion of the habeas corpus proceedings and specifically shall apply in the event of a resentencing, except that either party maintains the right to request modification or vacation of this Order upon entry of final judgment in this matter.
>
> IT IS FURTHER ORDERED that Respondents' deposition of Petitioner must specifically relate to assertions Petitioner has made in this habeas petition (or amendments thereto), and for which it is likely

that Petitioner has personal knowledge. The questions must be phrased in such a manner that they are directly linked to the federal claim upon which Petitioner is being deposed. Petitioner may assert his Fifth Amendment privilege, but the assertion of that privilege may be cause for the Court to draw an adverse inference in this habeas proceeding.

Despite the September 23, 2003, protective order, and despite the court's warnings that Lambright's refusal to answer could be considered in determining whether he had carried his burden of proof, Lambright refused to testify. The case proceeded to a hearing, and, in August 2004, the district court denied Lambright's ineffective assistance of counsel claim. Lambright appealed. The Ninth Circuit concluded that Lambright had received ineffective assistance of counsel, reversed the district court, vacated the death sentence, and remanded with instructions to grant the writ. *Lambright III*, 490 F.3d 1103.

## C. The District Court's 2008 Modification of the Protective Order

In October 2008, after the case had been returned to the district court, the State filed a Motion to Modify Protective Order requesting that the protective order be modified to allow the Pima County Attorney's Office access to the materials produced during the federal habeas proceedings. The district court granted the motion in part. It first explained:

It is apparent, when considered in context with the original motion and the oral argument, that the Court intended the above quoted protective order to address the concerns set forth in *Bean* and *Bittaker*. The second paragraph tracks *Bean* and protects Petitioner's Fifth Amendment right against self-incrimination, the only real concern raised by Petitioner in his motion. The first paragraph was

intended to track *Bittaker*. Although the Court did not include the word "privileged" as a modifier to the phrase "information, documents and materials," it is evident from a reading of *Bittaker* that a protective order's necessity derives solely from the need to protect the attorney-client privilege.

After discussing *Bittaker*, the district court determined that "a protective order under *Bittaker* limits use during retrial only of privileged materials obtained by invoking a federal habeas court's power of discovery compulsion for the limited purpose of litigating a petitioner's ineffectiveness claim." The court noted that Lambright opposed modification of the protective order on principle and had not identified "any privileged information or any self-incriminating statements obtained during the discovery process that, if disclosed to prosecutors, would prejudice his resentencing." The court concluded that the protection order "was intended to shield Petitioner from prejudice at retrial from (1) any statements he made during his deposition concerning the crime and (2) any information subject to the attorney-client privilege obtained during discovery." The court determined that it would modify the protective order "so that it will be narrowly tailored to solely protect documents and information that qualify for protection under the Fifth Amendment or the attorney-client privilege." To that end, Lambright was given 30 days in which "to identify the specific information or materials he asserts should be protected from use at his resentencing."

Lambright, instead of filing any further motion in the district court, filed a notice of appeal from the December 4, 2008, order. When Lambright failed to respond to the December 4, 2008, order, the district court issued an order on March 24, 2009, (a) granting the State's Motion for Modification of the Protective Order, (b) vacating the Protective Order, and (c) denying Lambright's motion for an order to show cause. Lambright filed another notice of appeal from this order.

Lambright's appeals from the December 4, 2008, order and the March 24, 2009, order were consolidated. On December 21, 2009, the Ninth Circuit issued a memorandum disposition. *Lambright v. Ryan*, 359 Fed. App'x 838 (9th Cir. 2009) ("*Lambright IV*"). The panel dismissed the first appeal as premature, and then set forth its ruling on the second appeal in two paragraphs. The first, explaining its action, reads:

> The district court did not explain the factual or legal basis of its ruling on Lambright's motion to sanction the state for violating the Protective Order. Instead, the court summarily dismissed the motion in a footnote. When a district court fails to make findings of fact in a ruling on a motion for discovery sanctions, the appellate court reviews its decision de novo. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9th Cir. 1990). In this case, however, de novo review is not possible because the record is unclear about the extent to which the Protective Order was violated, the reasons the violation occurred, and the prejudice that Lambright may have suffered as a result of the violation. Accordingly, we vacate the district court's dismissal of Lambright's motion and remand so that the court may resolve any disputed factual questions and make factual findings regarding the circumstances surrounding, and the extent and effect of, the violation and then determine whether sanctions are warranted.

359 Fed. App'x at 840-41 (footnote and final citation omitted). The second paragraph comments:

> Lambright's premature appeal cut short the district court's efforts to identify the material that Lambright believed merited continued protection under the Protective Order or a modified protective order. In particular, Lambright never responded to the court's request that he identify material that was protected

by his attorney-client privilege, work-product privilege, or Fifth Amendment privilege not to disclose information that could be used to establish aggravating factors or to undermine his claim of mitigating factors during future capital sentencing proceedings. *Estelle v. Smith*, 451 U.S. 454, 462 (1981). For the same reason, Lambright had no opportunity to explain whether, in his view, non-privileged material or material that did not emerge through the discovery process warranted protection, given this court's rationale in *Bittaker v. Woodford*: "If a prisoner is successful in persuading a federal court to grant the writ [of habeas corpus], the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free." 331 F.3d 715, 722 (9th Cir. 2003) (en banc). As a result, the district court did not have sufficient information to rule on the state's motion to modify the Protective Order and the record does not contain enough information to allow this court to review the district court's decision on that question.

*Id.* at 841 (parallel citation omitted).

## D. The District Court's 2010 Modification of the Protective Order

We finally come to the order that is presently before us. On remand, the district court, on May 4, 2010, issued an order granting the State's motion to modify the Protective Order, denying Lambright's motion for discovery and a hearing, and essentially denying Lambright's motion for an order to show cause.[1]

---

[1]Because I agree with the majority's denial of relief to Lambright on his motions to disqualify counsel, for discovery, and for sanctions, my discussion of the 2010 order is limited to the modification of the protective order.

The State sought modification to allow prosecutors access to the depositions and discovery obtained during the federal habeas proceedings. The district court found guidance in cases that considered (a) the avoidance of duplicative discovery, (b) whether the materials had been produced in reliance on the protective order, and (c) whether the information had been released through public court proceedings.

The court observed:

> [B]eginning in June 2002, [Lambright] willingly engaged in discovery and disclosure without the benefit of a protective order. Indeed, he was examined by his own experts on October 28 and December 3, 2002, and Respondents' experts on July 25 and 30, 2002. The Court's protective order, entered on September 23, 2003, does not state that it applies retroactively. Thus the only materials that fall within the scope of the protective order are those that were disclosed after September 23, 2003.

Lambright opposed the motion, arguing that the State had failed to provide notice that it would attempt to modify the protective order, and that he had relied on the protective order's broad language and the court's verbal assurances that his testimony would not be used against him in a later resentencing. The district court, however, was not persuaded. It noted that the order specifically provided that either party could seek modification and determined that Lambright did not rely on the order in conducting discovery. The court observed that Lambright had sought only a narrow protective order and that its verbal assurances covered only Lambright's testimony.

Reiterating the reasons set forth in its 2008 order, the district court explained that it had inadvertently omitted the word "privileged" in its protective order. The court stated that "it was apparent, when considered in context with the original

motion and oral argument in support of the motion, that the Court intended its protective order to address only the concerns set forth in *Bean* and *Bittaker*." The district court explained that its order "was intended to shield [Lambright] from prejudice at resentencing from (1) any statements he made during his deposition concerning the crime, and (2) any information subject to the attorney-client or work-product privilege obtained during discovery." The court concluded that "[b]ecause the plain language of the order extends beyond the parameters of privileged material — and Petitioner did not rely on the Court's mistake to litigate his ineffectiveness claim — modification is appropriate."

The district court then listed the general items from the habeas proceeding that Lambright claimed were covered by the attorney-client, work-product, and the Fifth Amendment privileges. The district court, however, chastised Lambright for failing to (a) identify specific communications or relevant dates of disclosure, (b) identify any compelled testimony, and (c) explain the relevance of his Fifth Amendment right against self-incrimination to the listed documents. Excluding Lambright's testimony (which remains protected), the only items arguably containing privileged attorney communications or work product were the interviews and depositions of trial counsel, but Lambright "failed to identify what in these transcripts is privileged."

Finally, the court concluded that because Lambright "did not seek to seal any of the materials submitted and testified to during the evidentiary hearing in support of his habeas claim, those materials became a matter of public record. The district court cited our language in *Foltz v. State Farm Mutual Insurance Co.*, 331 F.3d 1122, 1134 (9th Cir. 2003):

> When discovery material is filed with the court, however, its status changes. If the documents are not among those which have "traditionally been kept secret for important policy reasons," *Times Mirror*

*Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989), then "the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.)," *Phillips*, 307 F.3d at 1213, apply. In *Nixon v. Warner Communications*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed.2d 570 (1978), the Supreme Court recognized a federal common law right "to inspect and copy public records and documents."

This appeal is from the district court's May 4, 2010, order.

## II. STANDARD OF REVIEW

I agree with the majority that we review the modification of a protective order for abuse of discretion. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992). However, the abuse of discretion test we set forth in *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc), requires that the district court's findings be given substantial deference. In *Hinkson*, we stated:

> If the trial court identified the correct legal rule, we move to the second step of our abuse of discretion test. This step deals with the tension between the Supreme Court's holding that we may reverse a discretionary trial court factual finding if we are "left with the definite and firm conviction that a mistake has been committed," [*United States v.*] *U.S. Gypsum Co.*, 333 U.S. [333,] [ ] 395 [(1948)], and its holding that we may not simply substitute our view for that of the district court, but rather must give the district court's findings deference, see *Nat'l Hockey League* [*v. Metropolitan Hockey Club*], 427 U.S. [639,] [ ] 642 [(1976)]. Resolving that tension by reference to *Anderson*, we hold that the second step of our abuse of discretion test is to determine whether the trial court's application of the correct legal stan-

dard was (1) "illogical," (2) "implausible," or (3) without "support in inferences that may be drawn from the facts in the record." *Anderson* [*v. City of Bessemer*], 470 U.S. [564,] [ ] 577 [(1985)]. If any of these three apply, only then are we able to have a "definite and firm conviction" that the district court reached a conclusion that was a "mistake" or was not among its "permissible" options, and thus that it abused its discretion by making a clearly erroneous finding of fact.

*Id.* at 1262 (parallel citations and footnotes omitted).[2] Thus, the abuse of discretion standard requires that we defer to the district court unless its determination was a "mistake" or not among its "permissible options."

---

[2]The footnote in *Hinkson* that follows this paragraph reads:

This view of our test for abuse of discretion review — one that looks to whether the district court reaches a result that is illogical, implausible, or without support in inferences that may be drawn from the facts in the record — is one that already has partial support in a number of our cases and in those of other circuits. *See, e.g., Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 387 (9th Cir. 1993) ("The court's decision . . . is not implausible and, based upon this factor alone, the court's decision would not be considered an abuse of discretion."); *see also Savic v. United States*, 918 F.2d 696, 700 (7th Cir. 1990) ("A finding is clearly erroneous when, although there may be some evidence to support it, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' We may have such a conviction if the trial judge's interpretation of the facts is implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence.") (citations omitted), *cert. denied*, 502 U.S. 813 (1991); *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001) ("A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole."); *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 634 (6th Cir. 2000) ("[W]e cannot conclude that the district court's decision was so unreasonable, illogical, or arbitrary as to constitute an abuse of discretion.").

585 F.3d at 1262 n.21.

## III. DISCUSSION

An obvious question in light of the district court's prolonged, patient, and careful consideration of this case is how the majority can conclude that the district court's May 2010 order was an abuse of discretion. The majority asserts that the order was an abuse of discretion because: (1) the district court's "interpretation of the text of the protective order is illogical" (Majority at 12504); and (2) the district court "had a duty to enter a protective order prior to ordering the disclosure of privileged materials." Majority at 12505-06. Neither of these reasons withstands analysis.

### A. The District Court's Interpretation Of Its Protective Order Is Logical.

Although the majority may not like the May 2010 order, there is nothing "illogical" about it. As the district court noted, Lambright had engaged in discovery for some 15 months before seeking a protective order. During these 15 months, Lambright made a couple of motions to seal particular documents and the district court granted those motions. Lambright never sought a general protective order, and the motion for a protective order that he did file in September 2003 sought only to limit "the scope of questioning of Petitioner at his deposition." The facts that the parties had engaged in discovery for over a year without any protective order, and that Lambright's motion only sought prospective relief for testimony to be given at a deposition, would lead most judges and attorneys to "logically" conclude that the motion was forward-looking and did not concern any specific prior discovery, let alone all of it.[3]

---

[3]Furthermore, the majority's interpretation of the order is based, in part, on its misconception that the district court was compelled to issue a protective order when Lambright filed his habeas petition. *See supra*. Once this misconception is cleared, there is nothing illogical about reading the September 23, 2003 order as forward-looking, which was the district court's view of its order.

## B. The District Court Was Not Under Any Duty To Issue A Protective Order.

While the majority's first reason strays from the facts of this case, its second reason misstates the law and is unsupported by the facts. The majority misreads *Bittaker,* 331 F.3d 715, as requiring that all discovery in a federal habeas petition be sealed, regardless of whether any party has requested a protective order. This allows it to assert that the district court "had a duty to enter a protective order prior to ordering the disclosure of privileged materials." Majority at 12505-06. In support of its position the majority asserts that the "defendant impliedly waives his attorney-client privilege the moment he files a habeas petition alleging ineffective assistance of counsel." Majority at 12506-07. In one sense this is true as the petition places counsel's performance in issue. However, it does not follow that all discovery undertaken is privileged. Rather, as explained in *Bittaker*, an implied waiver for purposes of giving rise to a protective order arises when a party seeks a protective order from the court in return for disclosing particular information. 331 F.3d at 720. Thus, under *Bittaker*, the filing of a habeas petition is not in itself sufficient to invoke an implied waiver protective order. In this case, there does not appear to have been any request for a protective order prior to Lambright's September 2, 2003 motion.

1. *An implied waiver arises when a claim of privilege is presented to a court and any resulting protective order is forward-looking.*

Our en banc opinion in *Bittaker* starts by distinguishing an implied waiver from "the more traditional express waivers." 331 F.3d at 719. We explained:

> An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public.

Disclosures that effect an express waiver are typi-
cally within the full control of the party holding the
privilege; courts have no role in encouraging or forc-
ing the disclosure — they merely recognize the
waiver after it has occurred. The cases upon which
the state relies

. . . hold that, once documents have been turned over
to another party voluntarily, the privilege is gone,
and the litigant may not thereafter reassert it to block
discovery of the information and related communica-
tions by his adversaries. Because these express
waiver cases do not involve the court-ordered disclo-
sure of privileged information after "the client [has]
assert[ed] a claim or defense that place[d] at issue
the nature of the privileged material," we do not find
them particularly useful in ascertaining the scope of
Bittaker's waiver of his attorney-client privilege
under the fairness principle.

*Id*. at 719-20 (citations and footnote omitted). The opinion
further observes that an express waiver "need not be effectu-
ated by words or accompanied by the litigant's subjective
intent," and "the privilege may be waived by the client's, and
in some cases the attorney's actions, even if the disclosure
that gave rise to the waiver was inadvertent." *Id*. at 720 n.4.

In contrast, the doctrine of implied waiver "allocates con-
trol of the privilege between the judicial system and the party
holding the privilege." *Id*. at 720 (quoting *Developments in
the Law — Privileged Communications*, 98 Harv. L. Rev.
1450, 1630 (1985)). We explained:

The court imposing the waiver does not order disclo-
sure of the materials categorically; rather, the court
directs the party holding the privilege to produce the
privileged materials if it wishes to go forward with
its claims implicating them. The court thus gives the

holder of the privilege a choice: If you want to liti-
gate this claim, then you must waive your privilege
to the extent necessary to give your opponent a fair
opportunity to defend against it . . . . Essentially, the
court is striking a bargain with the holder of the priv-
ilege by letting him know how much of the privilege
he must waive in order to proceed with his claim.

*Id.*

We then noted that this regime gave rise to three important
implications. "The first is that the court must impose a waiver
no broader than needed to ensure the fairness of the proceed-
ings before it." *Id.* "Second, the holder of the privilege may
preserve the confidentiality of the privileged communications
by choosing to abandon the claim that gives rise to the waiver
condition." *Id.* at 721. Third, "if a party complies with the
court's conditions and turns over privileged materials, it is
entitled to rely on the contours of the waiver the court
imposes, so that it will not be unfairly surprised in the future
by learning that it actually waived more than it bargained for
in pressing its claims." *Id.*

Under the regime set forth in *Bittaker* the doctrine of
implied waiver does not arise when a habeas petition is filed,
but only once a defendant brings a question of privilege to the
court's attention. The court then "gives the holder of the privi-
lege a choice:" if he wants to litigate the claim, he must waive
the privilege "to the extent necessary to give your opponent
a fair opportunity to defend against it." 331 F.3d at 720. The
directive that an implied waiver only arises when the privilege
is presented to a court is reinforced by our statement in *Bit-
taker* that "[b]ecause these express waiver cases do not
involve the court-ordered disclosure of privileged information
after the client has asserted a claim or defense that placed at
issue the nature of the privileged material, we do not find
them particularly useful in ascertaining the scope of Bittaker's
waiver of his attorney-client privilege under the fairness doc-

trine." *Id.* at 720 (internal quotation marks and citation omitted).

Furthermore, the very purpose of an implied waiver makes it prospective only. An implied waiver is a court imposed limited waiver of a privilege, but "the holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition." *Id.* at 721. This is possible only if the court order imposing a limited waiver is in existence when the holder makes his choice. Thus, in a federal habeas petition an implied waiver arises only when the petitioner affirmatively asserts a privilege before the court and the court then issues a forward-looking protective order.

The majority ignores these features of the doctrine of implied waiver when it asserts that "the district court abused its discretion because it had a duty to enter a protective order prior to ordering the disclosure of privileged materials." Majority at 12505-06. In support of its assertion, the majority quotes our statement in *Bittaker* that "district courts have the obligation, whenever they permit discovery of attorney-client materials as relevant to the defense of ineffective assistance of counsel claims in habeas cases, to ensure that the party given such access does not disclose these materials, except to the extent necessary in the habeas proceeding." 331 F.3d at 727-28. We made this statement in the context of the question of enforcement. In that context, it is clear that "whenever they permit discovery of attorney-client materials" refers to protective orders issued in response to petitioners' assertions of privileges. Any suggestion that the filing of a habeas petition itself, or commencement of discovery in a habeas petition, somehow invokes an implied waiver would make implied waivers the rule, rather than an exception to "more traditional express waivers." *Id.* at 719.

2. *The District Court did not order disclosure of protected materials.*

The majority attempts to justify its application of the September 2003 protective order to prior discovery by asserting that the district court "entered an order in July 2001, authorizing the parties to engage in discovery." Majority at 12507. This effort to extend *Bittaker* reflects the majority's contention that the filing of the habeas complaint compels the immediate issuance of a protective order. The district court's docket sheet shows that only two orders were entered in July. The first one simply resets the preliminary scheduling conference. The second order sets dates for actions by counsel. Neither order was issued in response to any assertion of privilege by Lambright, and neither can be fairly read as ordering Lambright to take any action that was contrary to his attorney-client privilege or his privilege against self-incrimination.

Indeed, the district court's docket sheet reflects that the parties and counsel cooperated in the process of preparing the habeas case. The parties sought assistance from the district court to ensure funds for the preparation of Lambright's case and to set time tables for discovery. In the fall of 2002, when Lambright sought authorization of expenditures to allow a neuropsychologist to examine him, the district court's order allowing the neuropsychologist to have a confidential contact visit with Lambright was issued pursuant to a stipulation by the parties. The only other order that might arguably be interpreted as compelling discovery was entered on February 11, 2003, and directed the Arizona Department of Corrections to provide copies of Lambright's medical and mental health records to counsel for both parties. However, there is nothing in the record to suggest that Lambright had any concern about protecting those materials. Instead, Lambright's failure to advance any such concerns appears to have been deliberate,

as his counsel did file motions to seal other documents which the district court granted.[4]

A fair reading of the record discloses that: (a) the parties did not request any court order to commence discovery; (b) Lambright's counsel knew how to file motions to seal documents and successfully made such motions, and (c) Lambright did not make any assertion of privilege or request for a protective order prior to his September 2003 motion. Accordingly, as a matter of fact and law, there was no implied waiver or protective order prior to the fall of 2003.

## C. There Is No Showing That Lambright Was Not Represented By Competent Counsel In His Federal Habeas Proceeding.

Another troubling aspect of the majority's opinion is its failure to consider that Lambright was represented by counsel at all times in his federal habeas petition. Instead, the majority appears to assume that a defendant's right to a protective order under *Bittaker* is absolute and cannot be waived by a petitioner's counsel. The majority never explains why it deems this right different from all of the constitutional rights that can be waived.

Absent Supreme Court case law to the contrary, we should assume that whatever right to a protective order a petitioner may have under *Bittaker*, it can be waived by counsel for any number of reasons. Here, Lambright's attorneys apparently chose not to seek a protective order until Lambright was faced with a deposition. From all appearances this was a reasonable

---

[4]For example, on October 17, 2001, counsel filed a "Motion to file under seal Confidential Declaration by Joe Leonard Lambright." The court granted the motion on October 23, 2001. On June 13, 2002, Lambright filed a "Motion to file under seal confidential declaration of David P. Tiers: First Amended Phase v. Case Management Plan and Budget Plan by Joe Leonard Lambright." The court granted that motion on June 17, 2002.

strategic choice. Lambright has never explained why the exposure of the materials exchanged prior to the protective order has harmed him, or may harm him in the future. Moreover, Lambright succeeded in having a writ issue and forcing the State to resentence him. Whatever right to a protective order that may arise when a state prisoner files a federal habeas petition challenging the competency of his attorney in his state proceedings, that right may be waived by counsel and was waived by Lambright prior to his September 2003 motion for a protective order.[5]

### D. To The Extent That Materials Were Presented To The Court In Hearings On Lambright's Habeas Petition That Were Open To The Public, Lambright Has Waived His Right To Maintain Their Secrecy.

In granting the State's motion for a modification of the protective order, the district court relied in part on the established rule that the public has a common law right of access to judicial documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). It then found that because Lambright "did not seek to seal any of the materials submitted and testified to during the evidentiary hearing in support of his habeas claim, those materials became a matter of public record." In support of its conclusion the district court cited our holding in *Foltz* that:

---

[5]Arguably, a petitioner could claim that habeas counsel was ineffective in failing to assert his attorney-client privilege and privilege against self-incrimination, and in failing to seek a protective order. However, under *Strickland v. Washington*, 466 U.S. 668 (1984), petitioner would have to show both that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. Lambright would be hard pressed to meet these criteria. He prevailed on his habeas petition, and his failure to explain how the exposure of materials discovered prior to the protective order will prejudice him in the resentencing proceeding makes it impossible to find that he was prejudiced by counsel's failure to immediately seek a protective order.

> When discovery material is filed with the court, however, its status changes. If the documents are not among those which have traditionally been kept secret for important policy reasons, then the public policy reasons behind a presumption of access to judicial documents (judicial accountability, education about the judicial process etc.) apply.

331 F.3d at 1134 (internal citations and quotations omitted).

The majority concludes that the State may not use the materials even though they became part of the public record. It offers two grounds for its conclusion. First, it argues that a protective order under *Bittaker* is sufficient in itself "to protect the narrow waiver of the attorney-client waiver and work product privileges and to prevent the disclosure and use of materials in a resentencing proceeding." Majority at 12509. Second, it argues that Lambright "was entitled to rely on the assurances by the district judge, made during the evidentiary hearing, that the protective order extended to evidence introduced at the hearing." Majority at 12510. The first argument fails because, as has been noted, there was no implied waiver prior to the September 2003 protective order. The second argument fails because the district court's assurances were clearly limited to Lambright's testimony, and Lambright, despite having procured a protective order, declined to testify.

The majority's first argument is based on the fiction that the district court had somehow issued an implied waiver protective order prior to the September 2003 protective order. No such order was issued. As a result, the parties did not, and could not, contest the meaning of the protective order as the parties did in *Perry v. Brown*, 667 F.3d 1078 (9th Cir. 2012). In *Perry*, we determined that the district court abused its discretion and compromised the integrity of the judicial process by not enforcing its prior order affirmatively sealing the trial recording. *Id.* at 1088. Here, there was no assertion of an implied waiver or any request for a protective order until the

fall of 2003, and there is no identified order by the district court that sealed any matter prior to the September 2003 protective order. Thus, even if the recipient of a protective order under *Bittaker* might not be required to protect material from disclosure in a public trial, here there is no protective order and thus no presumably confidential materials.

The majority's second ground also fails because the facts are not as it portrays them to be. The assurance that the district court gave Lambright was clearly and specifically limited to his testimony. The district judge stated:

> Also, Mr. Lambright, I should mention I have also issued a protective order so that should the petition be granted, either now or at some later time and there is a new sentencing hearing in this case, your testimony concerning the crimes in this case that you would not otherwise answer but decide to answer could not be used against you in connection with that hearing.

This assurance, by its own clear terms, is limited to Lambright's testimony "concerning the crimes in this case" that he would not have given but for the protective order.[6] Thus, Lambright could not have relied on the assurance for anything other than the use of his testimony. But as Lambright chose not to testify, he cannot argue that he relied at all on the district judge's assurance.[7]

---

[6]The limited nature of the assurance is further supported by the district judge's prior statement to Lambright: "I do believe you have the right to refuse to answer questions that are asked of you during the examination, but unlike the situation where someone actually has a privilege, because you don't have a privilege, I can consider your refusal to answer questions in deciding whether to grant the petition in connection with this case."

[7]Perhaps in recognition of the weakness of its assurance argument, the majority states "although the assurances were made in the context of the testimony regarding the crime, as that was the testimony Lambright

Because no protective order was entered prior to the September 2003 order and the September 2003 order was, as a matter of law, forward-looking, it follows that the district court was not compelled to recognize any privilege in the materials discovered before September 2003. Indeed, it seems incredibly inefficient to require the State to go through the process of "rediscovering" in the state resentencing proceedings information that is now known to the public, and to the State.[8] If there are any items that should be suppressed or if any procedure should be unfair, Lambright's counsel can raise it in the state proceedings. I agree with the district court that the state courts will respect the protective order that the district court did issue.[9]

---

refused to give, there is no reason to believe that the protective order applied with any less force to other protected material introduced during the evidentiary hearing." Majority at 12511-12. Of course there are good reasons to question this assertion. There is no *Bittaker* protective order other than the September 2003 order, and as that order is limited to Lambright's testimony, there are no "other protected materials." How can a party rely on an assurance that was not made concerning a protective order that was never issued?

[8]Even if *Foltz*, 331 F.3d 1122, were not applicable, or if all the discovery in a federal habeas petition were construed to constitute documents "which have traditionally been kept secret for important policy reasons" (331 F.3d at 1134), the fact remains that here Lambright's documents were nevertheless exposed to the public at Lambright's habeas hearing. The majority's revision of the district court's protective order will force the state to conduct additional discovery, but it cannot put the cat back in the bag.

[9]At the November 14, 2003 hearing, Lambright's counsel, after indicating that he had thought that the protective order applied only to the discovery deposition, expressed concern that the state court on resentencing would not observe the district court's protective order. The district court responded:

> Well, I can't imagine the judge that would admit the evidence when any testimony concerning the crime was given on the assurance of the judge before the testimony was given that the testimony could not be used in connection with the resentencing, and

## CONCLUSION

On remand, counsel cooperated in preparing Lambright's federal habeas case. There was no request to seal documents or for a protective order until the fall of 2003 when Lambright filed a motion for a protective order limiting the scope of questioning at his forthcoming deposition. The district court, applying our then recent en banc opinion in *Bittaker*, 331 F.3d 715, issued a protective order that it subsequently determined was broader than necessary or appropriate. The State sought a modification of the protective order to allow it to use documents disclosed in the federal habeas proceedings in the state resentencing proceedings. The State did not seek to use Lambright's testimony because, even under the protective order, Lambright had refused to testify.

The majority's determination that the district court abused its discretion in modifying its protective order misreads *Bittaker* and the factual record. *Bittaker* holds that an implied waiver arises when a petitioner asserts a privilege before the district court. The court's subsequent order "does not order disclosure of the materials categorically; rather the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them." 331 F.3d at 720 (emphasis added). Thus, the very nature of an implied waiver protective order renders it forward-looking. Accordingly, the district court's orders prior to the September 2003 protective order are not protective orders and the September 2003 order does not cover materials disclosed prior to its issuance.

> that is the order that I have entered, so I think they would have to disregard the protective order that I have issued and I suspect you would be very successful in precluding any use of it, so I don't think it's a realistic risk.

Furthermore, as the district court implied, were the state court to disregard the district court's protective order, Lambright could file another federal habeas petition.

The majority also fails to appreciate two additional factors that support the district court's order. First, whatever rights Lambright might have had to a protective order were subject to waiver. Second, to the extent that the materials that Lambright now seeks to protect were disclosed during public sessions in his habeas proceedings, the State should be allowed to use those documents pursuant to the common law right of access to judicial documents.

Even if one or more of the preceding arguments were not persuasive, we would still be required to affirm the district court's modification of its protective order. As the majority notes, we review the modification of a protective order for abuse of discretion. *See Beckman Indus.*, 966 F.2d at 472. Thus, if the district court reasonably thought that under *Bittaker* its protective order was forward-looking, *or* that none of its orders prior to September 2003 constituted protective orders, *or* that Lambright had waived any privilege against the disclosure of discovery prior to the September 2003 order, *or* that the privilege had been lost by the exposure of the materials in the public proceedings, then we must affirm. The district court's order would not be a mistake or not among its permissible options. *See Hinkson*, 585 F.3d at 1262.

Finally, I am concerned with the practical consequences of the majority's approach. By distorting the doctrine of implied waiver and misreading the facts in this case, the majority delays and increases the expense of resentencing Lambright without offering him any substantive protection. The public and the State have knowledge of all the documents that the majority would protect. Thus, all the majority's opinion accomplishes is to force the State to conduct additional discovery in the resentencing proceeding to formally gather information that it has already seen. The district court recognized the inefficiency of such a course when it granted the motion to modify the protective order. Morever, the majority's unique interpretation of *Bittaker* is likely to generate considerable litigation as parties and courts argue over whether a

court order at the beginning of a federal habeas proceeding somehow seals all discovery beyond any attorney's ability to waive the privilege.[10] Accordingly, I dissent.

---

[10]This concern finds some support in the history of this case. The memorandum disposition in *Lambright IV* contained language that suggested that non-privileged documents might be covered by the protective order. 359 Fed. App'x at 841. Thus, on remand in the district court, Lambright argued that non-privileged documents were covered by the protective order. The district court disagreed, commenting that such a proffered expansive reading of *Bittaker* found no support in *Bittaker* and "taken to its logical conclusion . . . would also require that materials developed by Petitioner's federal habeas counsel be precluded from use at resentencing, forcing his state counsel to enlist new experts and reinvestigate mitigation." The majority now concludes that the district court did not abuse its discretion in holding that non-privileged materials were not covered by the protective order. Majority at 12516. I would go further and hold that non-privileged materials are not covered by any implied waiver.